# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA BEATTY, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING CO., INC., QUINCY BIOSCIENCE, LLC, PREVAGEN, INC. d/b/a SUGAR RIVER SUPPLEMENTS, QUINCY BIOSCIENCE MANUFACTURING, LLC, and MARK UNDERWOOD<br><br>Defendants. | CASE No.<br><br>**CLASS ACTION COMPLAINT** |

## NATURE OF ACTION

1. Defendants manufacture, market, and sell a supplement called Prevagen.

2. Until recently, Defendants have consistently made the following eight statements when promoting Prevagen ("challenged statements"):

   a. Prevagen improves memory,

   b. Prevagen is clinically shown to improve memory,

   c. Prevagen improves memory within 90 days,

   d. Prevagen is clinically shown to improve memory within 90 days,

   e. Prevagen reduces memory problems associated with aging,

   f. Prevagen is clinically shown to reduce memory problems associated with aging,

   g. Prevagen provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking,

   h. Prevagen is clinically shown to provide other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking.

3. In 2024, a jury in the Southern District of New York found that each of the challenged statements has a tendency to deceive and that two of them (e and f) were materially misleading (the *FTC Action*")

4. Judgement was entered against Defendants on November 18, 2024. However, the only relief sought and obtained by the Federal Trade Commission was injunctive relief.

5. This class action seeks to fill the gap by seeking statutory damages on behalf of New York class members who purchased Prevagen.

## PARTIES

6. Plaintiff Donna Beatty is domiciled in Milford, New Jersey. Within the last three years, Plaintiff purchased regular strength Prevagen several times from retail stores located in New York.

7. Before purchasing the products, Plaintiff reviewed and relied on the product packaging, including the representations that Prevagen provides cognitive benefits like "healthy brain function," a "sharper mind," and "clearer thinking;" and that Prevagen reduces memory problems associated with aging. Plaintiff would not have purchased Prevagen if she had known at the time that the statements had a tendency to deceive and/or were materially misleading.

8. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this action. Plaintiff has no conflict of interest with the proposed class members.

9. Defendant Quincy Bioscience Holding Company, Inc. is a Wisconsin corporation with its principal place of business at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Quincy Bioscience Holding Company, Inc. transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Quincy Bioscience Holding Company, Inc., through its wholly-owned subsidiaries, has advertised, marketed,

promoted, distributed, or sold Prevagen to consumers throughout the United States, including New York.

10. Defendant Quincy Bioscience, LLC is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc. It is a Wisconsin limited liability company with its principal place of business at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Quincy Bioscience, LLC transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Quincy Bioscience, LLC has advertised, marketed, promoted, distributed, or sold Prevagen to consumers throughout the United States, including New York.

11. Defendant Prevagen, Inc., also doing business as Sugar River Supplements, is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc. It is a Wisconsin corporation with its principal place of business at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Prevagen, Inc. transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Prevagen, Inc. has advertised, marketed, promoted, distributed, or sold Prevagen to consumers throughout the United States, including New York.

12. Defendant Quincy Bioscience Manufacturing, LLC is a wholly-owned subsidiary of Quincy Bioscience Holding Company, Inc. It is a Wisconsin corporation with its principal place of business at 726 Heartland Trail, Suite 300, Madison, Wisconsin. Quincy Bioscience Manufacturing, LLC transacts or has transacted business

4

in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Quincy Bioscience Manufacturing, LLC has advertised, marketed, promoted, distributed, or sold Prevagen to consumers throughout the United States, including New York.

13. Defendant Mark Underwood ("Underwood") is the co-founder and President of Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, and Prevagen, Inc. Underwood is a member of the Board of Directors of Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC and a shareholder of Quincy Bioscience Holding Company, Inc., owning 33 percent of shares, the largest individual ownership interest. Underwood, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States, including New York.

14. At all times material to this Complaint, acting alone or in concert with others, Underwood has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, and Prevagen, Inc., including the acts and practices set forth in this Complaint. Underwood is a member of the marketing creative team, serving as the final decision maker on advertising claims across all channels of distribution and media platforms. Underwood coordinates advertising claim language review with counsel, translates scientific data into marketing language, and directs research programs and activities. Underwood has appeared in infomercials aired nationwide, including in New York, touting Prevagen's memory improvement benefits and has co-authored studies on

5

Prevagen. Underwood also authored the "Brain Health Guide," a user guide disseminated nationwide, including in New York, that describes how Prevagen works and the purported science behind this dietary supplement.

15. Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below. These Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Underwood formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendants.

2. This Court has specific jurisdiction over each Defendant.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

4. **Product at issue:** Prevagen is a dietary supplement containing the active ingredient apoaequorin, a dietary protein, which according to Defendants was originally obtained from a species of jellyfish called *Aequorea victoria*.

5. Prevagen is available in Regular Strength (10 milligrams) and Extra Strength (20 milligrams) capsules and chewable versions, and Prevagen Professional (40 milligrams) capsules (collectively, "Prevagen Products" or "subject products").

6. A bottle of each Prevagen Product contains 30 tablets and provides a 30-day supply if taken once daily according to the product label's suggested use. The price per bottle ranges from $24.29 to $58.53 for Prevagen Regular Strength, $32.17 to $69.95 for Prevagen Extra Strength, $16.49 to $51.29 for Prevagen Chewable, and $39.33 to $68.40 for Prevagen Professional.

7. Apart from the labels "Regular Strength, "Extra Strength," "Chewable," and "Professional," the packaging of the Prevagen products were the same in all material respects.

8. The front and right-side labels look like this:




9. The left-side and back labels look like this:




10. **Relevant time period:** All misrepresentations at issue here were uniformly and consistently made at all times while the products were sold since 2007, if not earlier. The product packaging remained the same during the period, and any material changes that occurred were made, if at all, after the issuance of the November 18, 2024 injunction in the *FTC Action*.

11. **The misrepresentations:** The misrepresentations at issue are the same as those listed in Paragraph 2 above.

12. All of the misrepresentations are material to a reasonable consumer because they involve health and relate to the central characteristics of Prevagen.

13. The misrepresentations are also material because Prevagen is marketed for no purpose other than for its purported benefits on memory and cognition.

14. **How/why misleading:** Prevagen does not provide any of the advertised benefits.

15. During the trial in the *FTC Action*, Defendants' own expert admitted that "not much of anything is shown to directly help improve healthy brain function, memory, and cognition …."

16. The statement that "Prevagen is clinically shown to reduce memory problems associated with aging," also is materially misleading because Defendants have no studies showing that orally administered apoaequorin (the active ingredient in Prevagen) can cross the human blood brain barrier and benefit cognition. To the contrary, Defendants' own studies show that apoaequorin is rapidly digested in the stomach and broken down into amino acids and small peptides.

17. **Presuit notice:** Defendants were provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements.

18. **Tolling:** Any statute of limitation applicable to Plaintiffs' or class members claims are tolled because Defendants affirmatively hid the true nature of Prevagen while misrepresenting that the product provided benefits that it did not provide.

19. Plaintiffs and class members did not have the information essential to pursue their claims, without any fault or lack of diligence on their own part.

20. Defendants were under a duty to disclose the true character, quality, and nature of Prevagen to Plaintiffs. Defendants therefore are estopped from relying on any statute of limitations.

21. All applicable statutes of limitations have been tolled by operation of the discovery rule. Plaintiffs and other class members could not have learned through the exercise of reasonable diligence of Defendants' conduct as alleged herein.

## CLASS ALLEGATIONS

22. *Class Definition*: Plaintiffs brings this action on behalf of all people who purchased Prevagen in New York.

23. The class definitions is a placeholder that may be altered or amended before final judgment. Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by amendment or in the motion for class certification, including through the use of subclasses.

24. Excluded from the putative classes are Defendants and any entities in which Defendants have a controlling interest, Defendants agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

25. ***Numerosity.*** Class members are so numerous that their individual joinder is impracticable. The class includes thousands of consumers. The precise number of class members and their identities are unknown to the Plaintiff at this time but may be determined through discovery.

26. ***Commonality and Predominance***. Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

   a. Whether the challenged statements have a tendency to deceive;

   b. Whether statements that Prevagen is clinically shown to reduce memory problems associated with aging is materially misleading;

   c. Whether class members are entitled to statutory damages;

   d. Whether Defendants' conduct, as alleged herein, violates the consumer protection laws asserted here;

27. ***Typicality.*** Plaintiff's claims are typical of the claims of class members because Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct.

28. ***Adequacy***. Plaintiff will fairly and adequately protect the interests of class members. Plaintiff retained counsel that is highly experienced in complex consumer class

action litigation, and Plaintiff will vigorously prosecute this action on behalf of class members.

29. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for class members; the class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

30. Without a class action, Defendants will likely retain the benefits of their wrongdoing.

## FIRST CAUSE OF ACTION
### Violation of New York General Business Law § 349

31. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

32. Plaintiff brings this cause of action individually and on behalf all other class members.

33. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

34. In their sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York's General Business Law § 349.

35. Plaintiff and class members are consumers who purchased the subject products for their personal use.

36. By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices, as alleged above.

37. The foregoing deceptive acts and practices were directed at consumers.

38. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the subject products to induce consumers to purchase the same.

39. By reason of this conduct, Defendants engaged in deceptive conduct in violation of New York's General Business Law.

40. Defendants' actions are the direct, foreseeable, and proximate cause of the damages Plaintiff and class members have sustained from having paid for and used the subject products.

41. As a result of Defendants' violations, Plaintiff and class members have suffered damages because: (a) they would not have purchased the subject products on the same terms if they knew about Defendants' misrepresentations; (b) they paid price premium for the subject products due to the misrepresentations; and (c) the subject products do not have the characteristics, uses, benefits, or qualities as promised.

42. Plaintiff seeks all available relief under this cause of action.

## SECOND CAUSE OF ACTION

## Violation of New York General Business Law § 350

43. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

44. Plaintiff brings this cause of action individually and on behalf all other class members.

45. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

46. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

47. Based on the foregoing, Defendants engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

48. Defendants' false, misleading, and deceptive statements and representations of fact were and are directed toward consumers. Defendants also actively concealed and knowingly admitted material facts regarding the true nature of the subject products.

49. Defendants' false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

50. Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

51. As a result of Defendants' false, misleading, and deceptive statements and representations of fact, Plaintiff and class members have suffered and continue to suffer economic injury.

52. As a result of Defendants' violations, Plaintiff and class members have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew about Defendants' misrepresentations; (b) they paid price premium for the Products due to the misrepresentations; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

53. Plaintiff seeks all available relief under this cause of action.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

54. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

55. Plaintiff brings this cause of action individually and on behalf all other class members.

56. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

57. Plaintiff and the class members conferred a benefit on Defendants in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

58. Defendants knew of the benefit conferred on it by Plaintiffs and the Class Members.

59. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable. This caused injuries to Plaintiffs and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

60. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

61. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

62. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

63. Defendants are not innocent third parties but instead directly benefited from the unlawful conduct alleged here. Defendants benefit financially from their sales tactics and clearly retained financial benefits from consumers purchasing the products at issue. The relationship between Plaintiffs' and class members' detriment and Defendants' benefit flows from the challenged conduct alleged in this Complaint.

64. Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

- A. Certification of the proposed classes; appointment of Plaintiff as representative of the class; appointment of undersigned counsel as counsel for the classes;

- B. A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

- C. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

- D. For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury, or alternatively, non-restitutionary disgorgement of profits;

- E. For prejudgment interest on all amounts awarded;

- F. For an order awarding Plaintiffs and class members their reasonable attorney fees, expenses, and costs of suit.

- G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: January 24, 2025                    Respectfully submitted,

/s/ Stacy Ann Van Malden
Stacey Ann Van Malden

GOLDBERGER & DUBIN, PC
5114 Post Road
Bronx, NY 10471
(718) 601-2652
Fax: (212) 966-0588
Email: staceyl11@optonline.net

SMITH KRIVOSHEY, PC
Joel D. Smith
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
E-Mail: joel@skclassactions.com

Yeremey O. Krivoshey (SBN 295032)
(*pro hac vice* pending)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff*