# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA BEATTY, on behalf of herself and others similarly situated,<br><br>              Plaintiff,<br><br>              v.<br><br>QUINCY BIOSCIENCE HOLDING CO., INC., et al.,<br><br>              Defendants. | Case No. 1:25-cv-00727-DEH-VF |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

I.      PREVAGEN'S DEVELOPMENT AND SUBSTANTIATION ....................................... 3

II.     THE FTC/NYAG ACTION ......................................................................... 4

III.    PLAINTIFF'S ALLEGATIONS ...................................................................... 6

ARGUMENT ..................................................................................................... 7

I.      THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT
        FOR FAILURE TO STATE A CLAIM. ............................................................. 7

        A.      This Court Should Consider Extrinsic Documents That Are Referenced In,
                Quoted In, or Otherwise Integral to the Amended Complaint. ......................... 8

        B.      The Court Should Reject Plaintiff's Mischaracterization of the FTC/NYAG
                Action. .................................................................................... 9

        C.      Plaintiff Fails to Plausibly Allege That the Challenged Marketing Claims
                Were Misleading in a Material Way. .................................................. 10

                1.      Plaintiff Failed to Allege Any Facts That Plausibly Suggest That
                        the Challenged Marketing Claims Are Deceptive. ................................ 11

                2.      Plaintiff's Selective Citation to the MMS and to Quincy's Expert
                        Testimony Does Not Plausibly Allege That Quincy's Advertising
                        Is Deceptive. ................................................................. 13

        D.      Plaintiff's New Theories of Falsity Fail to State a Claim. .......................... 16

                1.      Plaintiff Cannot Reasonably Dispute That Apoaequorin Was
                        "Clinically Tested." ......................................................... 17

                2.      Plaintiff Does Not Plausibly Allege That Prevagen Is Unsafe. ................. 18

                3.      Plaintiff Cannot State a Claim with Respect to the Different
                        Prevagen Formulations. ....................................................... 19

        E.      Plaintiff's Arguments Concerning Vitamin D Lack Merit. ............................. 20

II.     THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH
        PREJUDICE. .......................................................................... 21

CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................7

*Bermudez v. Colgate-Palmolive Co.*,
   667 F. Supp. 3d 24 (S.D.N.Y. 2023).........................................................................11

*Binder v. Michael Kors (USA), Inc.*,
   No. 1:23-cv-03941, 2024 WL 3227943 (S.D.N.Y. June 28, 2024).........................21

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   3 N.Y.3d 200 (2004) ................................................................................................10

*Cerco Bridge Loans 6 LLC v. Schenker*,
   No. 1:23-cv-11093, 2025 WL 622608 (S.D.N.Y. Feb. 26, 2025) .............................7

*Diaz v. NBC Universal, Inc.*,
   536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd* 337 Fed. App'x 94 (2d Cir. 2009) ......8

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010).................................................................................7, 8

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)...............................................................................7, 11

*Francis v. Accubanc Mortg. Corp.*,
   No. 1:19-cv-00902, 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) .........................10

*In re GNC Corp.*,
   789 F.3d 505 (4th Cir. 2015) .............................................................................15, 16

*Hernandez v. Zenlen, Inc.*,
   No. 1:24-cv-04846, 2025 WL 1070331 (S.D.N.Y. April 9, 2025).........................17

*Hoffman v. Nat. Factors Nutritional Prods., Inc.*,
   No. 2:12-cv-07244, 2014 WL 2916452 (D.N.J. June 26, 2014)..............................11

*Housey v. Procter & Gamble Co.*,
   No. 1:21-cv-02286, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd*, No.
   22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022)............................................12

*Hughes v. Ester C. Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................................11

i

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 1:16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)...................................20, 21

*Kardovich v. Pfizer, Inc.*,
97 F. Supp. 3d 131 (E.D.N.Y. 2015) ....................................................................................7, 8

*Manuel v. Pepsi-Cola Co.*,
763 F. App'x 108 (2d Cir. 2019) ......................................................................................11, 12

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000).....................................................................................................7

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018)....................................................................................................21

*Perez v. B. Braun Med., Inc.*,
No. 1:17-cv-08512, 2018 WL 2316334 ...................................................................................19

*Rapoport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................................................10

*Segovia v. Vitamin Shoppe, Inc.*,
No. 7:14-cv-07061, 2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ...........................................14

*Stevens v. Walgreen Co.*,
623 F. Supp. 3d 298 (S.D.N.Y. 2022)......................................................................................19

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016).....................................................................................................13

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021)......................................................................................18

*Whyble v. Nature's Bounty Co.*,
No 7:20-cv-03257, 2023 WL 7165934 (S.D.N.Y. Oct. 31, 2023).....................................11, 13

**Other Authorities**

*Acetaminophen*, Food & Drug Admin. (2015),
https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/204767s000lbl.pdf
(last visited June 6, 2025) ........................................................................................................15

*Dietary Supplements*, Food & Drug Admin.,
https://www.fda.gov/food/information-consumers-using-dietary-
supplements/questions-and-answers-dietary-supplements (last updated Feb. 21,
2024) ........................................................................................................................................19

Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Quincy" or "Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Donna Beatty's Amended Complaint (the "Amended Complaint" or "FAC") with prejudice.

## INTRODUCTION

Despite now having two chances to state a claim for false advertising, Plaintiff's Amended Complaint continues to offer little more than unsupported conclusions and misstatements of fact. Plaintiff also *continues* to omit material details concerning Quincy's scientific substantiation and the details of a case filed against Quincy by the Federal Trade Commission ("FTC") and New York Attorney General ("NYAG")—a case in which Plaintiff did not participate but which purports to be the basis for her claims in this action. Rather than offering a single instance of actual supporting evidence to bolster her theories of deceptive conduct under the New York General Business Law Sections 349 and 350 (the "GBL"), Plaintiff concededly premises her Amended Complaint on the allegations levied against Quincy by the FTC and the NYAG over eight years ago, many of which were *unproven* at trial, as well as her own uninformed and misleading interpretation of the actual results of that trial. *See FTC v. Quincy Bioscience Holding Company, Inc.*, No. 1:17-cv-00124 (S.D.N.Y.) (the "FTC/NYAG Action").

But Plaintiff's misplaced reliance on the FTC/NYAG Action exemplifies the flaws in her case. She notably fails to mention, for example, that while a jury did find that two of the challenged statements violated the GBL, the jury *acquitted* Quincy of GBL liability with respect to the other six marketing claims at issue—claims that Plaintiff herself is now challenging here under the same statute. And, while Plaintiff "seeks to fill the gap by seeking statutory damages" that were not awarded in the FTC/NYAG Action, Plaintiff fails to tell the Court that the NYAG *sought* monetary

relief under the GBL for New York purchasers, but the Court rejected that request, leaving Plaintiff with no "gap" to fill.

And without being able to fully ride on the NYAG's coattails, Plaintiff's Amended Complaint fails because she is left with no actual facts upon which she can state a claim. Unlike a governmental agency, Plaintiff as a private individual has the burden of coming forward with affirmative, plausible allegations that the dietary supplement Prevagen® is incapable of providing the advertised benefits. Instead of doing so, Plaintiff seemingly reached her conclusions about Prevagen and worked backwards from there. Indeed, her only "facts" are cherry-picked excerpts from one of Quincy's own studies and testimony from one of Quincy's own experts in the FTC/NYAG who concluded that *Prevagen works as advertised.* Not only do these "facts" fail to support Plaintiff's claims, they affirmatively *rebut* them and show that the challenged marketing claims are *true.* Without any factual support, Plaintiff's Amended Complaint fails at the start.

Perhaps recognizing the hurdles to overcome the NYAG's shortcomings from the prior case, Plaintiff also tried to come up with some new theories for why a customer may be misled by Prevagen's prior advertising, including that statements that apoaequorin was "clinically tested" and that Prevagen comes in three different formulations somehow render Prevagen's marketing misleading. But outside of being inherently contradictory and implausible, these theories are just other ways of raising her efficacy claims for the effect of apoaequorin on cognitive function. Merely disguising an efficacy claim as something else does not excuse Plaintiff from plausibly alleging deception—something that Plaintiff (again) failed to do. Plaintiff also challenges Quincy's statement that Prevagen is safe, but rather than offering any concrete allegation as to whether the product has safety risks, she merely alleges a hypothetical possibility that someone *might* encounter them. This theory is not plausible to state a claim..

Given the number of fatal deficiencies in her Amended Complaint, Plaintiff's GBL claim fails as a matter of law. The purpose of the GBL is to remedy consumers who have been deceived by false and deceptive advertising, not to provide a means for individuals to follow-up government actions with cursory allegations in hopes of obtaining a windfall. Whether Plaintiff is parroting the NYAG's allegations or changing them slightly in an attempt to make them her own, she cannot plausibly state a claim under the GBL, and the Amended Complaint should be dismissed.

## STATEMENT OF FACTS

## I.     PREVAGEN'S DEVELOPMENT AND SUBSTANTIATION

Quincy is a biotechnology company that manufactures, distributes, markets, and sells a line of dietary supplements under the brand name Prevagen®. (FAC ¶ 1.) Prevagen products include Regular Strength, Extra Strength, and Professional, and are sold in both capsule and chewable formats. (*Id.* ¶ 19.) The active ingredients in Prevagen are apoaequorin, a calcium-binding protein derived from a protein found in a specific type of jellyfish, and vitamin D. (*Id.* ¶¶ 18, 24.)

Quincy has conducted substantial research on both Prevagen and apoaequorin. For instance, Quincy conducted and/or relied upon *in vitro* studies, canine studies, and human studies, all of which showed that Prevagen had improved various aspects of cognition and memory. (Metzinger Decl.[1] Ex. A at 10 nn. 1–7 (citing several of these studies).) Most importantly, Quincy conducted the Madison Memory Study (the "MMS"), a randomized, double-blind, placebo-controlled human clinical trial, which measured various aspects of cognitive function, including verbal learning, memory, executive function, visual learning, psychomotor function, and working memory. (*See id.* at 2–3.) At the outset of the study, individuals were segregated by their "level of self-reported cognitive impairment" using the AD8 screening tool. (*Id.* at 2.) Because

---

[1]     "Metzinger Decl." refers to the Declaration of Jaclyn M. Metzinger dated June 6, 2025 and filed herewith.

Prevagen's target market is healthy adults "who are cognitively normal or very mildly impaired," the MMS particularly focused on the 100 individuals who had AD8 scores between 0–2—i.e., the scores associated with healthy, older adults. (*Id.* at 2, 5.) The MMS showed a "statistically significant effect" in a subgroup of participants of healthy, community dwelling adults with no or "very mild" cognitive impairment—i.e., Prevagen's target population—and concluded that "Prevagen demonstrated the ability to improve aspects of cognitive function" in that population. (*See id.* at 5, 9.)

## II.    THE FTC/NYAG ACTION

In January 2017, the FTC and NYAG filed a complaint against Quincy and certain individual officers challenging eight marketing claims, all of which are also being challenged here: "Prevagen improves memory," "Prevagen is clinically shown to improve memory," "Prevagen improves memory within 90 days," "Prevagen is clinically shown to improve memory within 90 days," "Prevagen reduces memory problems associated with aging," "Prevagen is clinically shown to reduce memory problems associated with aging," "Prevagen provides other cognitive benefits, including but not limited to healthy brain function, a sharper mind, and clearer thinking," and "Prevagen is clinically shown to provide other cognitive benefits, including but not limited to healthy brain function a sharper mind, and clearer thinking" (collectively, the "FTC/NYAG Challenged Statements"). (*Compare* FAC ¶¶ 2, 26, *with* Metzinger Decl. Ex. B ¶¶ 36, 39, 42, 44.) In 2024, after extensive fact and expert discovery, the Honorable Louis L. Stanton presided over a jury trial of the NYAG's claims against Quincy[2] for violations of the GBL (the same statute

---

[2]    The court previously found that there was no right to a jury trial for the FTC's claims under the FTC Act, which only sought equitable relief, so the trial proceeded on the NYAG's claims only.

challenged by Plaintiff here) and New York Executive Law Section 63(12) ("Section 63(12)") which, according to the presiding court, are governed by different legal standards.

After the trial, the jury found that only two of the FTC/NYAG Challenged Statements were "materially misleading" to "reasonable consumers" in violation of the GBL: "Prevagen reduces memory problems associated with aging" and "Prevagen is clinically shown to reduce memory problems associated with aging." (Metzinger Decl. Ex. C at 2–3, 5.) The Amended Complaint conveniently omits, however, that the jury found that the remaining six FTC/NYAG Challenged Statements—which are all challenged in Plaintiff's Amended Complaint—did *not* violate the GBL. (*Id.*) In Judge Stanton's own words, the jury "acquitted" Quincy of liability under the GBL with respect to the remaining six FTC/NYAG Challenged Statements. (Metzinger Decl. Ex. D at 2.) Despite finding that six of the claims did not violate the GBL, the jury found that all eight FTC/NYAG Challenged Statements had a "tendency to deceive" "unthinking consumers" in violation of Section 63(12).[3] (Metzinger Decl. Ex. C at 8.)

On November 18, 2024, based on those Section 63(12) findings, the district court granted the NYAG's request for an injunction and entered a nationwide injunction preventing Quincy from using any of the eight NYAG/FTC Challenged Statements—subject to a pending appeal—but denied the NYAG's request for monetary relief. (Metzinger Decl. Ex. D at 3–4; *cf.* FAC ¶ 3.) On December 6, 2024, the District Court clarified the scope of its injunction and confirmed that the NYAG is not entitled to seek monetary relief. (Metzinger Decl. Ex. E at 4.)

---

[3]     There is no private right of action under Section 63(12). Quincy is appealing the finding under Section 63(12) because the Court instructed the jury to use an outdated, lower standard rather than the reasonable consumer standard and because no independent standalone cause of action exists under Section 63(12) in the absence of GBL liability for six of the FTC/NYAG Challenged Statements. *See FTC v. Quincy Bioscience Holding Co., Inc.*, No. 25-12 (2d Cir.).

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff, a New Jersey resident, alleges that she "periodically" purchased Prevagen from "sometime around 2019" until "approximately 2023." (FAC ¶ 6.)  Despite being domiciled in Milford, New Jersey—a township located on New Jersey's western border along the Delaware River—she claims to have purchased both regular strength and extra strength Prevagen from chain retail stores "in Manhattan and in the New York Hudson Valley area." (*Id.* ¶¶ 5–6.)  She further alleges that "[b]efore purchasing the products, [she] reviewed and relied on the product packaging," including representations that it provides cognitive benefits, that the product was safe, and that it had a "clinically tested ingredient." (*Id.* ¶ 7.)  Plaintiff does not allege that she suffered any negative health effects as a result of taking Prevagen; rather, she alleges that she was injured because she purchased the product but it allegedly did not work as advertised. (*Id.* ¶¶ 65–66.)  She therefore alleges that she may recover for the FTC/NYAG Challenged Statements, as well as statements that Prevagen is "safe," that "certain products are 'regular strength,' 'extra strength,' or 'professional formula,'" and that apoaequorin is a "clinically tested ingredient." (*Id.* ¶ 26.)

Notwithstanding her lack of injury and the NYAG's GBL loss, Plaintiff asserts that the nature of her action is to "fill the gap by seeking statutory damages on behalf of New York class members who purchased Prevagen." (*Id.* ¶ 4.)  Specifically, Plaintiff seeks to represent "all people who purchased Prevagen in New York after January 24, 2022." (*Id.* ¶ 72.)[4]

---

[4]    Oddly, while Plaintiff limited her proposed class period to the three years before the filing of her original Complaint in response to Quincy's motion that earlier purchases were barred by the statute of limitations, she continues to allege that the statute of limitations should be tolled. (*See* FAC ¶¶ 68, 71.)

## ARGUMENT

### I.    THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While well-pleaded facts in the Amended Complaint are accepted as true, however, "the court must disregard any 'conclusory allegations, such as formulaic recitations of the elements of a cause of action.'" *Cerco Bridge Loans 6 LLC v. Schenker*, No. 1:23-cv-11093, 2025 WL 622608, at *5 (S.D.N.Y. Feb. 26, 2025) (Ho, J.) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021)).

To meet her burden under the GBL, Plaintiff must plausibly allege that: "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25 (1995)).  Plaintiff must further allege facts showing that Quincy's "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

When deciding a motion to dismiss, this Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Even if it is not expressly incorporated by reference, however, the Court may further consider an authentic document "where the complaint 'relies heavily upon its terms and effect,' thereby

7

rendering the document 'integral' to the complaint." *Id.* (internal citation omitted). And, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 146–47 (2d Cir. 2011)).

### A. This Court Should Consider Extrinsic Documents That Are Referenced In, Quoted In, or Otherwise Integral to the Amended Complaint.

Here, Plaintiff's Amended Complaint contains references to numerous documents outside of the pleadings that are referenced, quoted and/or are otherwise integral to the Complaint. They should be considered in connection with this motion without converting the motion to one for summary judgment. *Cf.* Fed. R. Civ. P. 12(d).

**First**, Quincy is submitting publicly filed and publicly available documents from related litigations involving Prevagen, including trial testimony from the FTC/NYAG Action quoted and/or mischaracterized in the Complaint. (*See* Metzinger Decl. Exs. B–H.) Despite Quincy demonstrating in its prior motion to dismiss that Plaintiff had cherry-picked selected jury findings and out-of-context expert trial testimony from the FTC/NYAG Action, Plaintiff has *re-asserted* those same misleading arguments and out-of-context citations. (*E.g.*, Dkt. 32, at 6, 13–14; FAC ¶¶ 2–4.) The full context of those materials should be considered. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) ("In deciding a motion to dismiss, this court may consider the full text of documents that are quoted in the complaint . . ."), *aff'd* 337 Fed. App'x 94 (2d Cir. 2009).

**Second**, Plaintiff both affirmatively references Quincy's "own studies" in some places to support her allegations that Prevagen's marketing is false or misleading, and then alleges that Quincy has "no studies" for other propositions. (FAC ¶¶ 33, 37.) Quincy's report of the MMS,

its double-blinded, placebo-controlled randomized human clinical trial on apoaequorin (Metzinger

Decl. Ex. A) is therefore properly before the Court and should be considered on Quincy's motion.

**B.      The Court Should Reject Plaintiff's Mischaracterization of the FTC/NYAG Action.**

While Plaintiff's claims fail on their own, as discussed further below, her Amended

Complaint lacks merit for a more simple reason: she bases her claims on a series of

misrepresentations about the FTC/NYAG Action.  Plaintiff concedes that her suit "seeks to fill in

the gap" purportedly left after the FTC/NYAG Action reached final judgment on November 18,

2024.  (FAC ¶¶ 3–4.)  There is no "gap."  Despite being given the opportunity to correct her

misstatement after reviewing Defendants' initial motion to dismiss and the exhibits attached

thereto, (Dkt. 31–33), Plaintiff makes the same misrepresentation and again omits key facts about

that case, most notably that the jury found that six of the claims she is challenging here are *not*

materially misleading under the GBL—the same statute that serves as the basis for her sole cause

of action—*and* that the Court determined monetary relief, therefore, was *not* warranted under the

GBL.  (*Compare* FAC ¶ 2, *with* Metzinger Decl. Ex. C at 2–3, 5, *and* Metzinger Decl. Ex. E at 4.)

Indeed, the court noted that "[t]here was no evidence that Prevagen, or the Challenged Statements,

had actually caused economic injury."  (Metzinger Decl. Ex. D at 2.)

 Plaintiff's allegation that "a jury in the Southern District of New York found that many of

Defendants' representations about Prevagen have a tendency to deceive," but that "the only relief

sought and obtained by the Federal Trade Commission was injunctive relief" (FAC ¶¶ 2–3) is also

incredibly misleading insofar as it suggests that these findings were entered under the FTC Act.

Plaintiff would like this Court to believe that given that the FTC Act and the GBL are governed

by the same "reasonable consumer" standard, her GBL claims also have merit.  But the "tendency

to deceive" findings were entered under Section 63(12), a statute reserved for the NYAG.  Because

there is no private right of action under Section 63(12), the jury's "tendency to deceive" findings have no application whatsoever to Plaintiff's claims under the GBL. *See Francis v. Accubanc Mortg. Corp.*, No. 1:19-cv-00902, 2020 WL 2086038, at *4 (S.D.N.Y. Apr. 30, 2020).[5]

Undeterred, Plaintiff continues misstating the record and alleges that she can "fill in the gap" with monetary relief because "the only relief sought and obtained by the Federal Trade Commission was injunctive relief." (FAC ¶¶ 3–4.)  That statement blatantly ignores that NYAG *sought* monetary relief in the form of statutory damages and disgorgement on behalf of all New York purchasers under the GBL, but the district court denied it.[6]  (*See* Metzinger Decl. Ex. E at 4.) Given Plaintiff's repeated reliance on the FTC/NYAG action, the Court should find that those publicly filed "documents control and [that the] Court need not accept as true the allegations in the [A]mended [C]omplaint" that contradict them.  *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

### C.    Plaintiff Fails to Plausibly Allege That the Challenged Marketing Claims Were Misleading in a Material Way.

Plaintiff's attempt to avenge the NYAG's loss under the GBL with regard to the FTC/NYAG Challenged Statements and fails as a matter of law because she failed to allege that any of the challenged marketing claims alleged in the Amended Complaint are false or deceptive.

---

[5]    Interestingly, the Amended Complaint does not even *mention* that the NYAG was a co-plaintiff to the FTC in that action and the *only* plaintiff whose claims were actually decided by the jury.  It makes sense why Plaintiff would want to hide that fact from the Court given the jury's findings under the GBL completely refute much of Plaintiff's position in this litigation.

[6]    Plaintiff's failure to mention the NYAG's loss on civil penalties exemplifies how far her Amended Complaint strays from the intended purpose of the GBL.  The GBL as enacted was intended for the NYAG to pursue "cases that have a widespread effect" and seek civil penalties on behalf of affected persons.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205 (2004).  The private right of action was added later to permit individuals to "prosecute remaining actions" that did not warrant administrative action. *Id.*  It was not intended for greenlight Plaintiff's perfunctory attempt to seek monetary relief where the NYAG already tried and failed to do so.

To succeed on her GBL claims, Plaintiff must allege and establish that the "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink,* 714 F.3d at 741. Plaintiff has not done so.

Indeed, rather than alleging the existence of any facts suggesting falsity, Plaintiff disguises her improper lack of substantiation challenge by claiming that she "can affirmatively prove" that the statements are false. (FAC ¶ 46.) But without any facts to bolster this naked assertion, she cannot state a claim. That is particularly so where her challenges to Quincy's substantiation undercut her theories. Plaintiff repeatedly cherry picks both clinical evidence and expert testimony as supposedly forming her efficacy challenge, but those documents when read in context *support* each of the claims and evince that they are not materially misleading to a reasonable consumer (as the jury in the FTC/NYAG Action found for a majority of them). Given Plaintiff's inability to affirmatively allege deception and her reference to documents in the Amended Complaint that *support* the challenged marketing statements, Plaintiff's claims fail as a matter of law.

### 1.    Plaintiff Failed to Allege Any Facts That Plausibly Suggest That the Challenged Marketing Claims Are Deceptive.

As Plaintiff concedes, private individuals may not state a claim for false advertising by merely claiming that the company lacked sufficient substantiation. *See Hughes v. Ester C. Co.*, 930 F. Supp. 2d 439, 459 (E.D.N.Y. 2013); *Whyble v. Nature's Bounty Co.*, No. 7:20-cv-03257, 2023 WL 7165934, at *8 (S.D.N.Y. Oct. 31, 2023); *Hoffman v. Nat. Factors Nutritional Prods., Inc.*, No. 2:12-cv-07244, 2014 WL 2916452, at *3 (D.N.J. June 26, 2014). Rather, Plaintiff bears the burden to affirmatively allege sufficient facts to "plausibly infer that the products were incapable of providing the advertised benefits." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 38 (S.D.N.Y. 2023); *see also Manuel v. Pepsi-Cola Co.,* 763 F. App'x 108, 109 (2d Cir. 2019) (finding that without supportive evidence, "Plaintiffs cannot raise a plausible inference that

the use of the word 'diet' is false, inaccurate, or misleading").  Here, however, Plaintiff fails to offer any evidence showing that apoaequorin or Prevagen does not work as advertised; rather, she attacks Quincy's own substantiation and summarily concludes that she "can affirmatively prove that Defendants' products are no more effective than a placebo."  (FAC ¶ 46.)  But without actually alleging the existence of *any facts* to support this conclusory statement, Plaintiff's naked assertion of falsity is not enough to state a claim under the GBL.

The court's decision in *Housey v. Procter & Gable Co.* is instructive.  There, the plaintiff alleged that the defendant's toothpaste "cannot provide 'enamel safe whitening,' promote 'healthier gums,' or 'gently clean[]' due to the inclusion of charcoal in the challenged toothpastes.'"  No. 1:21-cv-02286, 2022 WL 874731, at *7 (S.D.N.Y. Mar. 24, 2022), *aff'd*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022).  The plaintiff in *Housey* supported the complaint's allegations of falsity by including three scientific articles that allegedly showed that the challenged claims were false.  *Id.* at *4–5.  After reviewing the articles in question, the court found that they did not support the allegations.  *Id.* at *6.  Because plaintiff failed to offer any evidence supporting her allegations that the challenged claims were false or deceptive, the court found that "plaintiff fails to raise a deceptive statement" and thus that her "claims fail."  *Id.* at *7.

Here, Plaintiff's Amended Complaint and bare conclusion that she "can affirmatively prove" falsity suffer from the same fatal flaw.  (FAC ¶ 46.)  Outside of attacking the substantiation that Quincy provided, Plaintiff does not allege the existence of *any* actual evidence or studies showing that Prevagen does not work as advertised.  Essentially, despite characterizing the MMS—a double-blinded, placebo-controlled, human clinical study—and the decade of corroborating evidence as Quincy "essentially saying 'Prevagen works because we say it does,'" (FAC ¶ 45), Plaintiff ironically takes the approach of arguing that "Prevagen does not work

12

because *I* say so."  This circular and conclusory allegation need not be taken as true, as it is expressly contradicted by documents incorporated by reference into the Amended Complaint.  And because Plaintiff has "not proffered clinical studies that prove" that Prevagen does not provide the advertised benefits, she "cannot plausibly allege that the claims related to [those] benefits are false, misleading, or deceptive."  *Whyble*, 2023 WL 7165934, at *8.

### 2.    Plaintiff's Selective Citation to the MMS and to Quincy's Expert Testimony Does Not Plausibly Allege That Quincy's Advertising Is Deceptive.

Unable to allege any of her own facts suggesting that Quincy's labeling is deceptive, Plaintiff instead relies on Quincy's studies and evidence developed during the FTC/NYAG Action, chops it up, and contorts it in an attempt to support her theories of falsity.  But "[w]here a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the amended complaint."  *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (citation omitted).  Here, far from supporting her claims, Plaintiff's cherry-picked excerpts of the studies and expert trial testimony—when read in their full context—vitiate her arguments entirely.

Take, for instance, Plaintiff's reliance on the 2016 published version of the MMS.  The Amended Complaint alleges that "[t]he MMS's purpose was to test the effects of Prevagen on 218 people, without regard to their purported cognitive status" and that there were no statistically significant results for "the entire study population" or "any of the endpoints they studied."  (FAC ¶ 40.)  This is simply wrong.  As made clear in the cited document, individuals were segregated by their cognitive impairment at the start of the trial using the AD8 screening tool, and "[b]ecause Prevagen is a dietary supplement intended for healthy, non-demented individuals, particular focus was placed on the AD8 0–1 and 0–2 groups, which included only those individuals with AD8 scores suggesting normal cognitive aging or very mild impairment."  (Metzinger Decl. Ex. A at 4.)  Indeed, while Plaintiff quotes a portion of a sentence that "no statistically significant results

were observed over the entire study population," she omits the second half of that sentence: it continues that "there were statistically significant results in the AD8 0–1 and AD8 0–2 subgroups." (*Id.* at 5.)  And the study concluded that "Prevagen demonstrated the ability to improve aspects of cognitive function in older participants with either normal cognitive aging or very mild impairment, as determined by AD8 screening."  (*Id.* at 9.)  In other words, the MMS supports the claims, and "nothing in the studies calls into question the purportedly false and misleading statements identified by Plaintiff."  *Segovia v. Vitamin Shoppe, Inc.*, No. 7:14-cv-07061, 2016 WL 8650462, at *5 (S.D.N.Y. Feb. 5, 2016).

Plaintiff further attempts to show that Quincy's claims are false by selectively quoting trial testimony from Dr. David Katz, one of Quincy's expert witnesses in the FTC/NYAG Action.  Dr. Katz is a physician specializing in internal medicine, preventative medicine, biostatistics, and public health.  (Metzinger Decl. Ex. F at 1230:16—1240:20.)  Dr. Katz did testify, as background to his opinions, that "not much of anything is shown to directly help improve healthy brain function, memory, and cognition."  (FAC ¶ 32.)  But he nevertheless concluded that Prevagen is a good option for people concerned about their cognition *precisely because* there are so few options available.  (Metzinger Decl. Ex. F at 1255:19—1263:9, 1278:8—1282:22, 1285:14—1286:19.)  Indeed, far from "admit[ing]" that the claims are materially misleading, (*cf.* FAC ¶ 32), Dr. Katz conducted an "extensive" review of the scientific support for the FTC/NYAG claims and concluded that the claims for Prevagen *are* adequately substantiated.  (Metzinger Decl. Ex. F at 1320:13–15.)  Simply put, Dr. Katz testified that he "believe[s] the product does what the marketing claims say it does.  It supports healthy brain function.  It can improve memory in less than 90 days.  It can support and improve cognition in adults with age-related declines in memory and cognition, otherwise generally healthy."  (*Id.* at 1287:11—1288:2.)  Accordingly, Plaintiff's

14

cherry-picked quotation of Dr. Katz's background testimony contradicts his actual opinion testimony, which was that the claims are fully supported and *not* misleading to a reasonable consumer.

Plaintiff further alleges that "Defendants' own studies showed that apoaequorin is rapidly digested in the stomach and broken down into amino acids and small peptides." (FAC ¶ 33.) But this cherry-picked allegation too is contradicted by the expert's actual opinion. Dr. Richard Goodman, author of the referenced study, explained at trial that his laboratory study did *not* conclude that apoaequorin was completely digested. (Metzinger Decl. Ex. G at 928:3–25.) Of course, even assuming portions of apoaequorin did digest and could not work through absorption in the stomach, that would not mean that Prevagen cannot provide the advertised benefits. An unknown mechanism of action does not mean that a product does not work as advertised, and in fact, is common across both dietary supplements and drugs. *See, e.g., Acetami nophen*, Food & Drug Admin. 13 (2015), https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/204767s000lbl.pdf (last visited June 6, 2025) ("The precise mechanism of the analgesic and antipyretic properties of acetaminophen is not established . . . .").

Plaintiff's reliance on Dr. Katz's testimony and Dr. Goodman's study further dooms her claims by tacitly acknowledging that reasonable experts found that the challenged claims are true. *See In re GNC Corp.*, 789 F.3d 505, 516 (4th Cir. 2015). (In fact, in addition to Drs. Katz and Goodman, the jury also heard from three *additional* experts who testified regarding Prevagen's efficacy.) In *GNC*, the plaintiffs brought consumer fraud claims—including under the GBL—alleging that a dietary supplement was "incapable of providing the advertised joint health benefits." *Id.* at 510. The district court dismissed the complaint despite the fact that plaintiffs alleged eleven studies concluding that the main ingredients in the supplements did not perform.

*See id.* at 511.  The Fourth Circuit affirmed the dismissal, recognizing that "in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false.  If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false." *Id.* at 516.  Here, not only did Plaintiff fail to allege that all reasonable experts would agree with her claims, but she failed to allege that *any* experts would agree with her.  The only expert alleged in the Amended Complaint came to the opposite conclusion: Quincy's claims are substantiated and are accurate.  (Metzinger Decl. Ex. F at 1287:11—1288:2.)  Thus, far from being unequivocal, Plaintiff's reliance on expert evidence dooms her claims.

### D.    Plaintiff's New Theories of Falsity Fail to State a Claim.

Even though her Amended Complaint purportedly "seeks to fill the gap" left by the NYAG's GBL loss in the FTC/NYAG Action, (FAC ¶ 4), the Amended Complaint strays well beyond the statements at issue in that litigation.  Instead, and perhaps recognizing that the FTC/NYAG Challenged Statements from her original Complaint are insufficient to state a claim, Plaintiff's Amended Complaint throws a whole new set of theories at the proverbial wall in an attempt to find a theory of falsity that sticks, including now claiming that the statements that that apoaequorin was clinically tested and Prevagen is "safe" are somehow misleading.  (*Id.* ¶ 26.) Setting aside the fundamental inconsistency with Plaintiff alleging that her action is designed to supplement the NYAG's action and challenging claims that were never raised in that case, these new theories each fail in their own right because Plaintiff did not—and cannot—allege facts sufficient to show that they are false or misleading to a reasonable consumer.

1.    **Plaintiff Cannot Reasonably Dispute That Apoaequorin Was "Clinically Tested."**

Plaintiff's theory that Quincy never "clinically tested" apoaequorin strains credulity. Plaintiff's Amended Complaint admits that apoaequorin was clinically tested. Indeed, Plaintiff specifically acknowledged in the Amended Complaint that "the 'clinical study' referenced on the labeling was" the MMS, meaning she admits that a clinical test took place. (FAC ¶ 39; *see also* Metzinger Decl. Ex. A.) Plaintiff goes on to argue that the statements are not sufficiently substantiated—not because no clinical test took place, but rather because of alleged flaws with the study. (FAC ¶¶ 37–39.) While these alleged flaws are belied by the referenced publication of the MMS itself, (*see supra* Section I.C.2), the fact remains that the Amended Complaint's reference and challenges to the MMS concede that apoaequorin is, in fact, a "clinically tested" ingredient. *Hernandez v. Zenlen, Inc.*, No. 1:24-cv-04846, 2025 WL 1070331, at *2 (S.D.N.Y. April 9, 2025).

*Hernandez* is on point and illustrates why Plaintiff's "clinically tested" theory falls. There, the plaintiff alleged that a deodorant's marketing that the product provided "72-hour odor protection" and was "clinically proven" to do so was misleading under the GBL because it was "never clinically tested." *Id.* at *1–2. Before the amended complaint was filed, the defendant provided the plaintiff with its testing, but instead of conceding that a test was performed or removing the allegations claiming that there was no testing, the amended complaint pressed on and alleged that because the test was flawed it "no way constitutes clinical proof." *Id.* at *2. The Court rejected this argument and granted the defendant's motion to dismiss, finding that the allegations that the products were not clinically tested that "cannot be squared with the FAC's allegation that [the defendant] 'never' clinically tested its product. A test, even if flawed, is still a test." *Id.*

Unable to seriously contend that apoaequorin was never "clinically tested," Plaintiff alleges that the statement is nonetheless misleading because a "reasonable consumer would infer that the ingredient referenced would provide the benefits advertised."  (FAC ¶¶ 47–48.)  But like in *Hernandez*, this interpretation of the term "clinically tested" is implausible: Plaintiff's deficient efficacy claims are wholly independent of her deficient claim that apoaequorin is not a "clinically tested ingredient," and she cannot "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances" would similarly conflate the two.  *See Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (citation omitted).  As Plaintiff must concede (and does concede in the Amended Complaint), apoaequorin is a "clinically tested ingredient"; her claims to the contrary lack plausibility and should be dismissed.

## 2.    Plaintiff Does Not Plausibly Allege That Prevagen Is Unsafe.

In addition to challenging Quincy's efficacy claims, Plaintiff also challenges Quincy's statements that Prevagen is "safe" even though it purportedly "carries a risk of side effects and potential interactions with prescription drugs."  (FAC ¶ 50.)  But Plaintiff does not allege any harm at all or any *actual* side effects or interactions with prescription drugs that she or anyone else claims to have experienced; rather, she premises her claims on the hypothetical risk that someone in its target market *might* one day be put at a higher risk of said side effects.  (*Id.* ¶¶ 51–52.) Tellingly, the only evidence on which Plaintiff relies is the backwards assertion that Quincy "does not deny" her fabricated safety concerns on its website, where it advises customers that they "may want to talk with [their] doctor before beginning Prevagen use" if they are concerned.  (*Id.* ¶ 53.)

Indeed, Quincy's suggestion is consistent with the FDA's guidance that all consumers should "talk to their doctor, pharmacist, or other health care professional before deciding to purchase or use a dietary supplement" because "some supplements might interact with medicines

or other supplements. *See Questions and Answers on Dietary Supplements*, Food & Drug Admin., https://www.fda.gov/food/information-consumers-using-dietary-supplements/questions-and-answers-dietary-supplements (last updated Feb. 21, 2024). Merely hypothesizing that there may be a risk does not make it so, and it certainly does not make Prevagen unsafe. And even if Prevagen was associated with reported side effects—which it is not—that still would not be enough to make the safety claim actionable. *See Perez v. B. Braun Med., Inc.,* No. 1:17-cv-08512, 2018 WL 2316334, at *2, 6 (S.D.N.Y. May 9, 2018 (dismissing GBL claim where company claimed its "IVC filters were safe, effective, and fit for implantation into the IVC" despite reported "side effects associated with IVC filters that are implanted long-term").

### 3.    Plaintiff Cannot State a Claim with Respect to the Different Prevagen Formulations.

Plaintiff's attempt to manufacture a claim concerning the three Prevagen formulations similarly fails. In the Amended Complaint, Plaintiff alleges that labeling different formulations of Prevagen as "regular strength," "extra strength," or "professional formula" is misleading because the names "suggest that different versions are more potent tha[n] others." (FAC ¶ 49.) But "[s]uch allegations do not state a claim because . . . the phrase[s] '[Regular or Extra] Strength' [or Professional Formula] on the label plainly refers to the strength of the medication." *Stevens v. Walgreen Co.*, 623 F. Supp. 3d 298, 305 n.3 (S.D.N.Y. 2022). Indeed, Plaintiff's assertion that the formulations have no "material differences" is belied by the products themselves: Regular Strength includes 10 mg of apoaequorin, Extra Strength includes 20 mg of apoaequorin, and Professional Formula contains 40 mg of apoaequorin. (FAC ¶ 19.) To the extent Plaintiff contends that these distinctions are still misleading as some sort of end-around efficacy claim, she is required to come forward with affirmative evidence to support her argument that increased concentration

of apoaequorin cannot provide the advertised benefits.  (*See supra* Section I.C.1.)  Plaintiff failed

to do so, and her one-paragraph allegation against the different formulations cannot state a claim.

### E.    Plaintiff's Arguments Concerning Vitamin D Lack Merit.

Defendants' first motion to dismiss noted that Prevagen contains Vitamin D, which is

another active ingredient that could also contribute to Prevagen's benefits.  (Dkt. 32, at 17.)

Plaintiff's claim that Quincy made this assertion "for the first time in these proceedings" is patently

false.  (FAC ¶ 56.)  The vast body of scientific evidence studying the effect of Vitamin D on

cognition and brain health was discussed at length during the FTC/NYAG Action, including by

another of Defendants' experts, Dr. Mindy Kurzer (a nutritional scientist), who testified about the

relationship between Vitamin D and cognitive function and concluded that Vitamin D studies also

substantiated the challenged claims.  (*See* Metzinger Decl. Ex. H at 1010:10–24, 1011:25—

1012:3; 1015:6–16.)  Yet again, despite her reliance on the portions of the FTC/NYAG trial that

she finds helpful to her, Plaintiff continues to ignore those portions of the trial that undercut her

position.  She cannot have it both ways.

Indeed, while Plaintiff concludes that Vitamin D cannot provide the purported cognitive

benefits, the only "facts" alleged in support of that assertion is that several other Vitamin D

manufacturers do not affirmatively advertise that their products improve memory.  (FAC ¶¶ 60–

61.)  But the manner in which other manufacturers advertise Vitamin D supplements is irrelevant

to the body of science supporting Vitamin D's cognitive benefits and supporting the challenged

marketing claims for Prevagen.  Notably, Plaintiff also fails to allege any facts or scientific

evidence suggesting that Vitamin D cannot provide the advertised benefits with or without

apoaequorin.  So, again, she fails to state a claim for relief.  (*See supra* Section I.C.1.)

And, in any event, Plaintiff's attempt to manufacture a price premium between "common

Vitamin D" supplements and supplements that also contain apoaequorin is akin to "comparing

apples to oranges." *Izquierdo v. Mondelez Int'l, Inc.,* No. 1:16-cv-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (finding that a comparison between dissimilar candies "tells the Court nothing about the value of the Candy, or whether the cost of the Candy was inflated by Mōndelez's allegedly misleading packaging"). Indeed, Plaintiff's "alternative" Vitamin D theory is little more than another trumped up efficacy/lack of substantiation claim, based yet again on her (unsupported) conclusion that apoaequorin could not provide additional benefits or value. But Quincy's addition of Vitamin D for its cognitive benefits does not support Plaintiff's supposition that apoaequorin is not also effective or that it does not also contribute to Prevagen's advertised benefits. Like her initial theory, her alternative theory based on the inclusion of Vitamin D is defective and fails.

## II. THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH PREJUDICE.

Because Plaintiff has now had two opportunities to state a claim yet failed to remedy the deficiencies and misstatements that permeated her Complaint and now her Amended Complaint, she "clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018); *see also Binder v. Michael Kors (USA), Inc.*, No. 1:23-cv-03941, 2024 WL 3227943, at *12 (S.D.N.Y. June 28, 2024) (Ho, J.) (denying leave to amend further when the plaintiff was already "on notice" of defendants' arguments yet still failed to state a claim under the GBL). "Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Nat'l Credit Union Admin. Bd.*, 898 F.3d at 258. Accordingly, the Amended Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Quincy respectfully requests that the Court dismiss Plaintiff's

Amended Complaint with prejudice.

Dated: June 6, 2025                  KELLEY DRYE & WARREN LLP

By: */s/ Geoffrey W. Castello*
Geoffrey W. Castello
Jaclyn M. Metzinger
Glenn T. Graham
Gregory T. Berman
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
gcastello@kelleydrye.com
jmetzinger@kelleydrye.com
ggraham@kelleydrye.com
gberman@kelleydrye.com

*Counsel for Defendants Quincy Bioscience*
*Holding Company, Inc., Quincy Bioscience,*
*LLC, Prevagen, Inc., and Quincy Bioscience*
*Manufacturing, LLC*

## <u>TYPE-VOLUME CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1, the undersigned counsel of record hereby certifies that this memorandum contains 6,796 words, which complies with the word-count limitations of Local Civil Rule 7.1(c).  This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

By:    */s/ Jaclyn M. Metzinger*
Jaclyn M. Metzinger