**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNA BEATTY, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING CO., INC., et al.,<br><br>Defendants. | Case No. 1:25-cv-00727-DEH-VF |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. THE OPPOSITION CONFIRMS THAT PLAINTIFF CANNOT STATE A CLAIM UNDER THE GBL ................................................................................................ 2

    A. Plaintiff Does Not Address Her Misrepresentations Concerning the FTC/NYAG Action ............................................................................................. 2

    B. Plaintiff Cannot Justify Her Misrepresentations of Quincy's Substantiation ........ 4

    C. Plaintiff Failed to Identify Any Alleged Facts to Support Her Theories ............... 5

    D. Plaintiff Admits That Apoaequorin Was "Clinically Tested" ................................ 7

    E. Plaintiff Fails to Plausibly Allege That Prevagen Is Unsafe ................................. 8

    F. Plaintiff Cannot Salvage Her Claims for Different Prevagen Formulations ......... 9

    G. Plaintiff's Arguments Concerning Vitamin D Lack Merit .................................. 10

II. PLAINTIFF DID NOT ADDRESS DEFENDANTS' ARGUMENT THAT THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH PREJUDICE ....................................................................................................................... 11

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amla Litig.*,
   282 F. Supp. 3d 751 (S.D.N.Y. 2017)...................................................................................8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................6

*Baines v. Nature's Bounty (NY) Inc.*,
   No. 2:21-cv-05330, 2023 WL 2185603 (E.D.N.Y. Jan. 3, 2023), *report and
   recommendation adopted*, 2023 WL 2662313 (E.D.N.Y. Mar. 28, 2023), *aff'd*,
   No. 23-710, 2023 WL 8538172 (2d Cir. Dec. 11, 2023)..........................................................3

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .....................................................................................8

*Bermudez v. Colgate-Palmolive Co.*,
   667 F. Supp. 3d 24 (S.D.N.Y. 2023).........................................................................................4

*Collins v. Quincy Bioscience, LLC*,
   No. 1:19-cv-22864, 2020 WL 3268340 (S.D. Fla. Mar. 19, 2020) ..........................................5

*Engert v. Quincy Bioscience*,
   No. 1:19-cv-00183, 2019 WL 4962597 (W.D. Tex. Oct. 8, 2019), *report and
   recommendation adopted*, 2020 WL 504660 (W.D. Tex. Jan. 9, 2020)...................................5

*In re GNC Corp.*,
   789 F.3d 505 (4th Cir. 2015) ...................................................................................................3

*Hernandez v. Zenlen, Inc.*,
   No. 1:24-cv-04846, 2025 WL 1070331 (S.D.N.Y. Apr. 9, 2025) ...........................................7

*Housey v. Procter & Gamble Co.*,
   No. 1:21-cv-02286, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd*, No.
   22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022)..............................................................6

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .....................................................................................6

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ......................................................................................... 8-9

*Leonard v. Abbott Lab'ys, Inc.*,
   No. 2:10-cv-04676, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) .............................................8

*MacNaughton v. Young Living Essential Oils, LLC*,
 575 F. Supp. 3d 315, 323 (N.D.N.Y. 2021), *aff'd in part and rev'd in part*, 67
 F.4th 89 (2d Cir. 2023) ..................................................................................................6

*Murrow v. Quincy Bioscience Holding Co.*,
 No. 1:23-cv-14893, 2025 WL 446149 (N.D. Ill. Feb. 10, 2025)..........................................5, 8

*O'Neill v. Standard Homeopathic Co.*,
 346 F. Supp. 3d 511 (S.D.N.Y. 2018).................................................................................8

*Pearson v. Gesner*,
 125 F.4th 400 (2d Cir. 2025) ............................................................................................4

*Perez v. B. Braun Med., Inc.*,
 No. 1:17-cv-08512, 2018 WL 2316334 (S.D.N.Y. May 9, 2018).............................................9

*Quinn v. Walgreen Co.*,
 958 F. Supp. 2d 533 (S.D.N.Y. 2013).................................................................................6

*Salahuddin v. Jones*,
 992 F.2d 447 (2d Cir. 1993)...............................................................................................6

*Sheiner v. Supervalu Inc.*,
 No. 7:22-cv-10262, 2024 WL 2803030 (S.D.N.Y. May 28, 2024) ........................................11

*Stevens v. Walgreen Co.*,
 623 F. Supp. 3d 298 (S.D.N.Y. 2022).................................................................................9

*Turnipseed v. Simply Orange Juice Co.*,
 No. 7:20-cv-08677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022)...........................................10

*Warren v. Coca-Cola Co.*,
 670 F. Supp. 3d 72 (S.D.N.Y. 2023)...................................................................................7

*Whitaker v. Pharmavite LLC*,
 No. 2:22-cv-04732, 2023 WL 3370729 (C.D. Cal. May 9, 2023)...........................................9

*Whyble v. Nature's Bounty Co.*,
 No. 7:20-cv-03257, 2023 WL 7165934 (S.D.N.Y. Oct. 31, 2023)..........................................7

*Whyble v. Nature's Bounty Co.*,
 No. 7:20-cv-03257, 2025 WL 968784 (S.D.N.Y. Mar. 31, 2025)...........................................5

Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC (collectively, "Quincy" or "Defendants") hereby file their reply brief in further support of their motion to dismiss Plaintiff's Amended Complaint (the "Motion" or "Mot.").[1]

## INTRODUCTION

Over eight years ago, the NYAG and FTC filed a complaint against Quincy challenging eight memory-related representations. After a jury found that *six* of those statements did not violate the GBL (the only cause of action alleged in this case), the Court confirmed that Quincy was "acquitted" under the GBL for those statements and later denied the NYAG's request for monetary relief in its entirety. Plaintiff filed her Complaint one month later, seeking "to fill the gap" left by the NYAG's loss "by seeking statutory damages." But there is no "gap" to fill because that court determined that monetary relief was inappropriate.

Plaintiff's Amended Complaint is premised on cherry-picked aspects of the FTC/NYAG Action but ignores or fails to appreciate the overall takeaway from that case as laid out in Defendants' Motion—Quincy *prevailed* on three-quarters of the GBL claims and the Court *denied* monetary relief similar to what Plaintiff is seeking here. Instead of addressing the express contradictions between her allegations and the reality of the outcome at trial, Plaintiff accuses Defendants of imposing a higher burden of "proof" and requiring Plaintiff to offer "evidence" to support her allegations. But Defendants are not asking Plaintiff to "offer evidence"; they ask the Court to consider the implications of the evidence that Plaintiff herself alleged in the Amended Complaint, which is routinely done on motions to dismiss. When stripped of the contradictory allegations in the Complaint, the Court is left with nothing but *unsupported* and *conclusory*

---

[1] All terms not otherwise defined herein have the same definition as used in the Motion.

allegations, which are not accepted as true. In short, Quincy is not placing a burden on Plaintiff to come forward with evidence. Since Plaintiff has *chosen* to put certain evidence at issue (including from the FTC/NYAG Action and "Defendants' own studies"), that evidence should be considered here because it completely undermines the plausibility of her Amended Complaint.

And while Plaintiff offered a number of other scattershot theories under the GBL that were not asserted in the FTC/NYAG Action, none have merit because she openly concedes in her Opposition that (a) apoaequorin *was* clinically tested; (b) she did not suffer any side effects or adverse reactions as a result of taking Prevagen; and (c) different formulations of Prevagen do, in fact, contain different concentrations of apoaequorin.

Because Plaintiff cannot point to *facts* in her Amended Complaint that state a claim under the GBL despite having two opportunities to do so, her FAC should be dismissed with prejudice.

## ARGUMENT

### I. THE OPPOSITION CONFIRMS THAT PLAINTIFF CANNOT STATE A CLAIM UNDER THE GBL

#### A. Plaintiff Does Not Address Her Misrepresentations Concerning the FTC/NYAG Action

Plaintiff's Opposition notably fails to defend her misapplication of the FTC/NYAG litigation. Indeed, Plaintiff selectively cites the jury's findings on "competent and reliable scientific evidence" under the FTC Act and "tendency to deceive" under Section 63(12), but she ignores that these standards do not apply to the GBL. (Opp. at 1, 8, 19.) She also notes the jury's findings that two of the Challenged Statements were found to violate the GBL, but ignores that the other six—all *included* in Plaintiff's Amended Complaint—were *acquitted* of GBL liability. (*Id.* at 1, 8.) Plaintiff even accuses Defendants of asking "the Court to ignore the point of Plaintiff's allegations about the FTC/NYAG trial," when this is exactly what *Plaintiff* asks the Court to do. (*Id.* at 8.) Consideration of material from the trial that Plaintiff affirmatively cited in her Amended

2

Complaint is plainly appropriate: "where the pleading selectively quotes from the reference, the Court properly considers the full text of the reference material when determining the plausibility of Plaintiff['s] claims." *Baines v. Nature's Bounty (NY) Inc.*, No. 2:21-cv-05330, 2023 WL 2185603, at *3 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 2662313 (E.D.N.Y. Mar. 28, 2023), *aff'd*, No. 23-710, 2023 WL 8538172 (2d Cir. Dec. 11, 2023).

Nor does Plaintiff address her repeated misrepresentation (or half-truth) that "the only relief sought and obtained by the Federal Trade Commission was injunctive relief." (FAC ¶ 3.) While the FTC only sought injunctive relief at the end of the case (because the court had previously dismissed its restitution claim), Plaintiff omits that the NYAG *did* seek monetary relief after trial and the court *rejected* that request for relief. (Mot. at 10.)

Finally, Plaintiff has been given three opportunities to correct her mischaracterization of Quincy's expert testimony but failed to do so. She alleged in both complaints that Dr. David Katz "admitted that 'not much of anything is shown to directly help improve healthy brain function, memory, and cognition.'" (Compl. ¶ 15; FAC ¶ 32.) In response to that misrepresentation, Defendants demonstrated, in both motions to dismiss, that Dr. Katz concluded (1) that Prevagen was a good option for people concerned about their cognition precisely *because* there are so few options available; and (2) that the advertising claims challenged by Plaintiff *are substantiated*. (Dkt. 32, at 13–14; Mot. at 14–15.) While Plaintiff argues that Defendants are putting some "interpretive spin" on Dr. Katz's testimony, he plainly concluded that Prevagen "does what the marketing claims say it does." (*Compare* Opp. at 8, *with* Mot. at 14–15.)[2]

---

[2] Ironically, Plaintiff cites Quincy's expert's testimony and not the NYAG's expert's testimony. Thus, this case is even stronger than *In re GNC Corp.*, where the court affirmed dismissal in the face of allegations regarding qualified experts coming to different conclusions. 789 F.3d 505, 516 (4th Cir. 2015). Here, Plaintiff *only* cites an expert who opined *in favor* of Prevagen's efficacy. (Mot. at 15.)

Quincy has not asked the Court to "infer that all of Defendants' evidence in the trial [] is true." (Opp. at 2.) Rather, Quincy asks the Court to review the evidence *that Plaintiff cited in her Amended Complaint* and consider that evidence in context instead of relying blindly on cherry-picked portions that Plaintiff presented. *See Pearson v. Gesner*, 125 F.4th 400, 407 (2d Cir. 2025) (finding that a court may rely on the full contents of a document on a motion to dismiss where the plaintiff relies on its "terms and effect"). This is not "extraordinary," as Plaintiff contends. (Opp. at 2). To the contrary, "[c]ourts regularly look to documents referenced in a complaint and make such determinations on a motion to dismiss." *Bermudez v. Colgate-Palmolive Co.,* 667 F. Supp. 3d 24, 38 (S.D.N.Y. 2023).

The trial record is clear: (1) the jury found that six of the Challenged Statements do not violate the GBL; (2) the Court denied the NYAG's requested monetary relief; and (3) Dr. Katz testified that the challenged advertising claims for Prevagen are substantiated. While Plaintiff argues that all reasonable inferences must be drawn in her favor, Plaintiff's own alleged evidence demonstrates that there are no such reasonable inferences to be drawn.

**B.    Plaintiff Cannot Justify Her Misrepresentations of Quincy's Substantiation**

In the Motion, Defendants examined each of Plaintiff's citations to the MMS, explaining that the documents when read in their context contradict Plaintiff's position. (Mot. at 13–16.) Plaintiff notably does not—because she cannot—rebut Defendants' corrections to her selective quotations. Instead, Plaintiff argues that this presents a factual issue because she "alleges (i) that the information in the Madison Memory Study is false; (ii) that Defendants' expert provided adverse testimony; and (iii) that Defendants were ultimately found to be liable in the earlier proceedings." (Opp. at 6 (citations omitted).) But that is Defendants' point: Plaintiff *alleges* all of these conclusions, but none of her conclusions are supported by any alleged facts and, in fact, are disproven by the documents on which Plaintiff relies and Defendants attached to their Motion.

4

Plaintiff's reliance on prior pleading stage decisions purportedly rejecting the MMS is also misplaced. For instance, unlike Plaintiff's Amended Complaint, which directly (mis)quotes the MMS, the operative complaint in *Engert v. Quincy Bioscience* did not address the MMS at all, so that court determined it was not incorporated by reference. No. 1:19-cv-00183, 2019 WL 4962597, at *3 (W.D. Tex. Oct. 8, 2019), *report and recommendation adopted*, 2020 WL 504660 (W.D. Tex. Jan. 9, 2020). As for *Collins v. Quincy Bioscience, LLC*, Plaintiff did not cite to a motion to dismiss, but rather to a motion to certify a class, because there was no decision on the motion to dismiss in that action. No. 1:19-cv-22864, 2020 WL 3268340, at *1 (S.D. Fla. Mar. 19, 2020). And in *Murrow v. Quincy Bioscience Holding Co.*, the court declined to consider the MMS when evaluating establishment claims but nonetheless *dismissed* the complaint for failing to state a claim. No. 1:23-cv-14893, 2025 WL 446149, at *4 (N.D. Ill. Feb. 10, 2025).

Undeterred, Plaintiff asserts that her allegations control at the pleading stage even in the face of cited, contradictory documents. (Opp. at 7–8.) But "when a plaintiff chooses to rely on studies in their complaint in an effort to raise a plausible inference, and the studies [do] not support that position, the plaintiff has not plausibly pled." *Whyble v. Nature's Bounty Co.*, No. 7:20-cv-03257, 2025 WL 968784, at *4 (S.D.N.Y. Mar. 31, 2025). Here, the MMS lends no support to Plaintiff and, when viewed its entirety, it undermines rather than supports her allegations.

### C. Plaintiff Failed to Identify Any Alleged Facts to Support Her Theories

Defendants' Motion further argued that because private individuals may not challenge a lack of substantiation in the same manner as government agencies, Plaintiff must allege facts to support her conclusion that the challenged statements are misleading. In Opposition, Plaintiff acknowledges that she "does not currently allege a lack-of-substantiation claim" but argues that she nonetheless states a claim because she alleges that the Challenged Statements are positively false. (Opp. at 9–10.) But merely pleading that statements are "positively false" without alleging

5

factual support cannot state a plausible claim. (Mot. at 11–12.) Indeed, Plaintiff's cases challenging allegedly false advertising all refer to scientific data to support their falsity claims. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 537–38 (S.D.N.Y. 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 459–60 (E.D.N.Y. 2013). Even *MacNaughton v. Young Living Essential Oils, LLC,* which Plaintiff cites in an attempt to lay the groundwork for her unpled lack-of-substantiation theory, referenced actual scientific studies in the complaint to support its GBL theories. 575 F. Supp. 3d 315, 323 (N.D.N.Y. 2021), *aff'd in part and rev'd in part*, 67 F.4th 89 (2d Cir. 2023). Here, however, Plaintiff relies upon nothing more than her own say-so.

Requiring supportive factual allegations does not amount to an improper burden of "proof," as Plaintiff suggests. (Opp. at 2–4.) It is black letter law that Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, as Plaintiff points out, the Court's role on a motion to dismiss is to "assess the legal feasibility of the complaint." (Opp. at 3 (citation omitted).) To do so, the Court accepts *well-pleaded* (i.e., factually supported) allegations but ignores unsupported, conclusory, or contradictory allegations. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993). Instead of demonstrating how she provided a "short," "plain," and "plausible" explanation for why apoaequorin allegedly does not work as advertised, Plaintiff cites to the same cherry-picked (and contradicted) excerpts from Quincy's own studies and from the FTC/NYAG Action and concludes this was enough. (*Id.*) It is not. (Mot. at 13–16; *supra* Section I.A.)

Without any supportive facts to support her falsity theory, "[P]laintiff fails to raise a deceptive statement" actionable under the GBL. *Housey v. Procter & Gamble Co.,* No. 1:21-cv-02286, 2022 WL 874731, at *7 (S.D.N.Y. Mar. 24, 2022), *aff'd*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022). Plaintiff argues that "the problem in *Housey* was not that the plaintiff

6

failed to meet some purported burden to produce 'evidence' in support of the complaint, but instead, the plaintiff had voluntarily relied on evidence that contradicted her implausible theory." (Opp. at 5.) In other words, the Opposition argues that *Housey* is inapposite because the complaint relied on unsupportive evidence while Plaintiff, who relies on *no* supporting evidence, somehow stated a claim based on her own say-so. This rationale makes no sense, as Plaintiff too "voluntarily relie[s]" on cherry-picked portions of evidence that, when read in context, "contradict[s] her implausible theory." (*Id.*; *see supra* Section I.B.) Regardless, merely repeating that Prevagen "do[es] not provide the purported [brain] health benefits" without alleging supporting facts "fail[s] to 'provide a sufficient factual basis in support of such a contention.'" *Whyble v. Nature's Bounty Co.*, No. 7:20-cv-03257, 2023 WL 7165934, at *6 (S.D.N.Y. Oct. 31, 2023).

### D. Plaintiff Admits That Apoaequorin Was "Clinically Tested"[3]

Plaintiff openly admits that she "does not allege that Defendants never did a clinical test on apoaequorin" but maintains that apoaequorin is not a "clinically tested ingredient." (Opp. at 12–13). Plaintiff cites to no allegations in her FAC to support this contradictory position, but instead relies on paragraphs discussing whether Defendants' efficacy claims were "clinically proven." (*See id.* at 12.) Indeed, Plaintiff distinguishes *Hernandez v. Zenlen, Inc.* because it did not concern claims "based on 'clinically proven' statements" supported by allegedly unreliable proof, "which is precisely the situation here." (Opp. at 14 (quoting No. 1:24-cv-04846, 2025 WL 1070331, at *3 (S.D.N.Y. Apr. 9, 2025).) But the case says nothing about her "clinical testing" allegations beyond rejecting the theories she asserts.

---

[3] Apparently conceding that her "specific labeling claims" are dressed-up apoaequorin efficacy claims, Plaintiff contends that the Court cannot address her labeling challenges because it concerns "parts of Plaintiffs' claims." (Opp. at 11-12.) Plaintiff is incorrect. The Court should consider each representation alleged in the Amended Complaint and, because "none of the aspects of the Product's label identified by Plaintiff would mislead a reasonable consumer," dismiss those claims. *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 86 (S.D.N.Y. 2023).

7

Nor does *Murrow* counsel against dismissal. Unlike *Murrow*, which included allegations that "clinically tested" conveyed an establishment claim, Plaintiff alleges no facts concerning the claim beyond the same recycled efficacy claims. (*Compare* FAC ¶¶ 47–48, *with Murrow*, Dkt. 1 ¶¶ 87–91 (N.D. Ill. Oct. 23, 2023).) In any event, Plaintiff's reliance on *Murrow* is misplaced because the court ultimately granted the Defendants' motion to dismiss. 2025 WL 446149, at *5. The same result should hold true here because Plaintiff admittedly does not dispute that apoaequorin is a "clinically tested ingredient."

### E. Plaintiff Fails to Plausibly Allege That Prevagen Is Unsafe

Plaintiff offers no serious argument to support her theory that she may recover based on unsupported "safety" claims. To the contrary, Plaintiff openly *admits* that she never personally experienced any side effects or adverse medical interactions after taking Prevagen; rather, Plaintiff claims that she suffered an economic injury from the "unqualified misrepresentation that [Prevagen] was 'safe.'" (Opp. at 15.) And the only "fact" Plaintiff alleges is that Prevagen may pose a risk of side effects or interactions with medications. (*Id.*) But almost everything someone ingests—be it a food, a supplement, or a drug—has a *potential* for side effects, and that potential does not render a product "unsafe" or, as Plaintiff alleges, overpriced.

Moreover, the cases Plaintiff cites to support her so-called "economic injury" exemplify the flaw in her theory: each alleged that the product was *actually unsafe*. *E.g., In re Bayer Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 374 (E.D.N.Y. 2010) (recommended dosage of calcium exceeded safe dosage of aspirin); *Leonard v. Abbott Lab'ys, Inc.*, No. 2:10-cv-04676, 2012 WL 764199, at *1 (E.D.N.Y. Mar. 5, 2012) (contaminated with beetles and their larvae); *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 519 (S.D.N.Y. 2018) (contained toxic material); *In re Amla Litig.*, 282 F. Supp. 3d 751, 756 (S.D.N.Y.

2017) (caused "pain and damages" to hair and scalp); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 493 (E.D.N.Y. 2017) (concerning "septic safety" of clogged plumbing, not human safety).

Here, Plaintiff cannot escape her failure to allege facts showing that Prevagen was unsafe or that she paid any premium. She references her allegation of "potential" (i.e., hypothetical) side effects that may occur, but even if the Court were to assume that Plaintiff was at risk of side effects or adverse interactions with medication, that allegation does not state a claim. (Mot. at 18–19 (citing *Perez v. B. Braun Med., Inc.*, No. 1:17-cv-08512, 2018 WL 2316334, at *2, 6 (S.D.N.Y. May 9, 2018)).) Plaintiff claims that Defendants cited a portion of *Perez* involving an express warranty—which is false, as the Motion cites and quotes from excerpts concerning the GBL—and it is distinguishable because the plaintiff there failed to identify any misrepresentations. (Opp. at 16.) Plaintiff is incorrect. *Perez* did not find that the complaint failed to identify any misrepresentations, but rather that the identified safety claims were *not* misrepresentations despite the alleged side effects. 2018 WL 2316334, at *6. Likewise, Plaintiff's safety claims lack merit and should be dismissed.

### F. Plaintiff Cannot Salvage Her Claims for Different Prevagen Formulations

Plaintiff misconstrues Defendants' arguments about the different Prevagen formulations and attempts to create a fact issue on the meaning of the terms, but there is none: the phrases "regular strength," "extra strength," and "professional formula" plainly refer to the relative amount of apoaequorin in each pill. *See Stevens v. Walgreen Co.,* 623 F. Supp. 3d 298, 305 n.3 (S.D.N.Y. 2022). Plaintiff, ignoring the Motion's cited language, attempts to distances herself from *Stevens* by arguing that the product's effectiveness there depended on the number of doses per serving; however, her primary case cites *Stevens* because it is based on the same theory. *Whitaker v. Pharmavite LLC*, No. 2:22-cv-04732, 2023 WL 3370729, at *3 (C.D. Cal. May 9, 2023). In any

9

event, however, it is undisputed here that the formulations contain different concentrations of apoaequorin, defeating Plaintiff's claim. (*See* Opp. at 16–17; Mot. at 19.)

### G. Plaintiff's Arguments Concerning Vitamin D Lack Merit

Plaintiff further fails to explain how her newfound theories concerning Vitamin D—which were not based on any impression that Plaintiff had at the time of purchase or any representation that caused her purchase, but rather on "Defendants' first motion to dismiss," (Opp. at 18)—could state a claim. As a threshold matter, Plaintiff is mistaken that the Motion only responds to one of her two Vitamin D theories. (*Id.* at 19.) The Motion expressly addressed "Plaintiff's attempt to manufacture a price premium between 'common Vitamin D' supplements and supplements that also contain apoaequorin" as being an applies-to-oranges comparison given the additional benefits provided by apoaequorin. (Mot. at 20–21.) Plaintiff fails to respond to this argument.

Nor does Plaintiff substantively rebut Defendants' arguments on the efficacy of Vitamin D. As Defendants pointed out, Plaintiff's theory that Vitamin D provides no cognitive benefits contains no supportive allegations and is based on little more than reference to other manufacturers that do not make the same claim. (Mot. at 20.) Plaintiff asserts that the Court should adopt her unbounded speculation because it "lends plausibility to Plaintiff's allegation that [Prevagen] does not" provide cognitive benefits. (Opp. at 20.) Absent from the Opposition is reference to any *facts* alleged in the Amended Complaint to support this theory. (*See supra* Section I.C.) Worse, Plaintiff's conclusion is contradicted by the scientific evidence that Plaintiff herself incorporated into the Motion by relying on the testimony and results from the FTC/NYAG Action. (Mot. at 20.) Again, Plaintiff asserts that correcting her misstatements creates a factual dispute, but the Court "is not required to accept Plaintiff's conclusory statements without more," particularly where "Plaintiff fails to substantiate how exactly" she arrived at those conclusions. *Turnipseed v. Simply Orange Juice Co.*, No. 7:20-cv-08677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022).

## II.  PLAINTIFF DID NOT ADDRESS DEFENDANTS' ARGUMENT THAT THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

Rather than substantively responding to Defendants' argument that her Amended Complaint should be dismissed with prejudice, Plaintiff offers a single sentence that "[i]f the Court determines the pleadings are deficient in any respect, Plaintiff requests an opportunity to amend." (Opp. at 20.)  But Plaintiff already had that opportunity, and this passing request "offer[s] no explanation for how [s]he would be able to cure the defects in her claims." *Sheiner v. Supervalu Inc.*, No. 7:22-cv-10262, 2024 WL 2803030, at *9 (S.D.N.Y. May 28, 2024).  It should be denied.

## CONCLUSION

For the foregoing reasons and those discussed in the Motion, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated: July 21, 2025         KELLEY DRYE & WARREN LLP

By: */s/ Geoffrey W. Castello*
Geoffrey W. Castello
Jaclyn M. Metzinger
Glenn T. Graham
Gregory T. Berman
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
gcastello@kelleydrye.com
jmetzinger@kelleydrye.com
ggraham@kelleydrye.com
gberman@kelleydrye.com

*Counsel for Defendants Quincy Bioscience Holding Company, Inc., Quincy Bioscience, LLC, Prevagen, Inc., and Quincy Bioscience Manufacturing, LLC*

## TYPE-VOLUME CERTIFICATION

Pursuant to Local Civil Rule 7.1, the undersigned counsel of record hereby certifies that this memorandum contains 3,474 words, which complies with the word-count limitations of Local Civil Rule 7.1(c). This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

By: */s/ Jaclyn M. Metzinger*
Jaclyn M. Metzinger