UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONNA BEATTY, on behalf of herself and others similarly situated,

Plaintiff,

v.

QUINCY BIOSCIENCE HOLDING CO., INC., QUINCY BIOSCIENCE, LLC, PREVAGEN, INC. d/b/a SUGAR RIVER SUPPLEMENTS, and QUINCY BIOSCIENCE MANUFACTURING, LLC,

Defendants.

---

25 Civ. 727 (DEH)

**MEMORANDUM OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Donna Beatty brings this putative class action under the New York General Business Law ("GBL") §§ 349 and 350, alleging Defendants Quincy Bioscience Holding Co., Inc., Quincy Bioscience, LLC, Prevagen, Inc. d/b/a Sugar River Supplements, and Quincy Bioscience Manufacturing, LLC (collectively, "Defendants" or "Quincy") made false and misleading statements related to marketing for Prevagen, a supplement with the main ingredient apoaequorin. Plaintiff alleges that Quincy's representations that, among other things, Prevagen benefits cognition and brain health are based on false representations of a clinical study that, in reality, showed no benefit from apoaequorin—the ingredient with the alleged cognitive benefits. Defendants move to dismiss the First Amended Complaint ("FAC"), attaching several hundred pages of extrinsic evidence that they claim proves the effectiveness of Prevagen and disproves Plaintiff's allegations. As discussed herein, the Court concludes that Plaintiff has adequately alleged violations of §§ 349 and 350 of the GBL and **DENIES** the motion to dismiss.

## A.    Legal Standards

*Motion to Dismiss.*    To survive a motion to dismiss pursuant to Rule 12(b)(6),[1] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Id.* at 106-07. But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

*New York Deceptive Trade Practices Act.*    The New York Deceptive Trade Practices Act prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . .." N.Y. Gen. Bus. Law § 349(a). Under New York Law, false advertising means "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law §§ 350-a. The NYGBL requires a showing of "consumer injury or harm to the public interest." *Cedar Communities At Staunton I, LLC v. A Place for Mom, Inc.*, No. 24 Civ. 9737, 2026 WL 504820, at *4 (S.D.N.Y. Feb. 23, 2026).

## B.    Consideration of Extrinsic Evidence

As an initial matter, Defendants' reliance on extraneous evidence in support of their motion to dismiss—*see* Mem. in Supp. of Mot. to Dismiss at 6-7 ("Mot."), ECF No. 44; Decl. of Jaclyn M. Metzinger in Supp. of Mot. to Dismiss, ECF No. 45—is improper. Plaintiff alleges that the underlying data from the Madison Memory Study (the "Study")—conducted by Quincy to attempt

to prove the efficacy of Prevagen—demonstrates the ineffectiveness of Prevagen's main ingredient, apoaequorin, even though the Study itself claims to show treatment benefits. Plaintiff also cites testimony from Defendants' expert witness in an unrelated case brought by the FTC that "admitted that 'not much of anything is shown to directly help improve healthy brain function, memory, and cognition.'" FAC ¶ 32, ECF No. 39. Defendants argue that Plaintiff's use of underlying data from the Study and citation to Quincy's expert's statements means that the full scope of those documents and testimony can be considered on a motion to dismiss. Mot. at 7-8.

While a court can consider documents that are incorporated by reference in a complaint, "it must be clear on the record that . . . there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111-13 (2d Cir. 2010) (holding lower court erred by interpreting a document in defendant's favor when granting a motion to dismiss). But a court cannot assume the truth of all portions of those documents when they contradict a plaintiff's allegations in their pleadings. *Pearson v. Gesner*, 125 F.4th 400, 406-07 (2d Cir. 2025); *see also Sutton v. TED Found., Inc.*, No. 23 Civ. 9219, 2026 WL 207000, at *3 (S.D.N.Y. Jan. 27, 2026) (declining to consider evidence attached to a motion to dismiss that contradicted plausible allegations in a complaint). This is particularly the case where the documents that Defendants attempt to use in support of dismissal were submitted by Defendants for "self-serving" reasons. *Pearson*, 125 F.4th at 407.

Applying these principles here, the Court cannot, at this stage of the litigation, rely on the documents proffered by Defendants to reach their preferred conclusion that Prevagen works as advertised. On a motion to dismiss, the Court must look to Plaintiff's plausible allegations—here, that the Study includes cherry-picked data and misrepresents outcomes, FAC ¶ 42—and need not accept as true the claims by the study's proponents that contradict Plaintiff's view of the results. *Pearson*, 125 F.4th at 406-407; *see also SEC v. Ripple Labs, Inc.*, 2022 WL 762966 at *1 n.1

3

(S.D.N.Y. Mar. 11, 2022) (considering documents outside the complaint but "continu[ing] to draw all reasonable inferences in the [plaintiff's] favor").  This Court joins many others in concluding that Defendants' arguments regarding the validity of the Madison Memory Study, which rely on extrinsic documents rather than the allegations in the Complaint, are for later stages of litigation. *See Murrow v. Quincy Bioscience Holding Co.*, 23 Civ. 14893, 2025 WL 446149, at *5 (N.D. Ill. Feb. 10, 2025) (describing and rejecting Defendants' factual assertions about the Madison Memory Study); *Engert v. Quincy Bioscience, LLC*, 2020 WL 504660 at *2 (W.D. Tex. Jan. 9, 2020) (denying motion to dismiss over Defendants' argument that the study "demonstrates that Quincy's marketing statements were both truthful and fully-substantiated"); *Collins v. Quincy Bioscience, LLC*, 2020 WL 3268340 at *7 (S.D. Fla. Mar. 19, 2020) (certifying class over Defendants' objection that the Madison Memory Study furnished "substantive support for its marketing statements").  The Court further concludes that the same analysis applies to the testimony of Defendants' expert.  That is, while this expert's testimony is referenced in the FAC, the Court need not accept all of the statements related to Prevagen in that testimony as true for purposes of resolving this motion to dismiss.

## C.    The Merits

Turning now to its analysis of the FAC, the Court concludes that Plaintiff has plausibly alleged violations of the New York GBL for allegedly misleading statements on Prevagen's packaging.  As explained below, this conclusion is compelled by Second Circuit precedent concerning Prevagen and nearly identical allegations of misleading representations about it.

Plaintiff alleges that the statements at issue here are misleading because the Madison Memory Study was a negative study that showed no statistically significant results.  FAC ¶¶ 40-43.  As Plaintiff alleges, the study showed no cognitive benefit from Prevagen because it is rapidly digested by the stomach and pancreas, preventing the apoaequorin from reaching the brain.  FAC

4

¶ 33.   Plaintiff then alleges that the study was retroactively and selectively altered to yield the desired result in an unscientific and inappropriate manner.   FAC ¶¶ 42-44.   Thus, as Plaintiff alleges, the data from the study cannot support the conclusion that Prevagen provides any cognitive benefit.   FAC ¶ 45.   Plaintiff alleges that several statements on Prevagen's packaging (shown below) are false or misleading based on the inefficacy of oral apoaequorin.   These statements include:

1.   Prevagen "Improves Memory" (front of box).

2.   Prevagen "supports healthy brain function, [a] sharper mind, [and] clearer thinking" (front of box).

3.   Prevagen "supports healthy brain function" (top of the box).

4.   Apoaequorin "uniquely supports brain function" (back of box).

5.   Prevagen "is clinically shown to help with mild memory loss associated with aging" (back of box).

6.   "Clinically tested ingredient" (front of box).

7.   The representations that certain products are "regular strength," "extra strength," or "professional formula" (front of box).

8.   "Safe and clinically tested ingredient" (back of box).

FAC ¶ 26.  Each of these statements is also shown in the below image of the most recent Prevagen packaging.



FAC ¶ 24.

For each of these statements, Plaintiff has plausibly alleged a claim under the GBL. As the

Second Circuit explained when reversing a grant of a motion to dismiss based on nearly identical

allegations regarding Prevagen,

> The FTC has stated a plausible claim that Quincy's representations about Prevagen
> are contradicted by the results of Quincy's clinical trial and are thus materially
> deceptive in violation of the FTC Act and New York General Business Law. 15
> U.S.C. §§ 45(a), 52; N.Y. GBL §§ 349-350. For example, the FTC's Complaint
> quotes Quincy's broad claim that in a clinical study "Prevagen improved memory
> for most subjects within 90 days." App'x at JA-27, ¶ 27C. Yet the Complaint
> alleges that Quincy's clinical study of Prevagen "failed to show a statistically
> significant improvement in the treatment group over the placebo group on any of
> the nine computerized cognitive tasks." App'x at JA-37, ¶ 28. Taking these
> allegations as true, not only has the FTC adequately alleged that Quincy's study
> undermines its representations that "the majority of people" experience cognitive
> improvement from taking Prevagen, App'x at JA-164, but the FTC has also stated
> a claim that Quincy's representations that this cognitive improvement is clinically
> supported are deceptive. *See In the Matter of Bristol-Meyers Co.*, 102 F.T.C. 21,
> 22 (1983) (requiring advertisers to "possess the level of proof claimed in the ad"
> where "an advertisement represents that a particular claim has been scientifically
> established"), *aff'd*, *Bristol-Myers Co. v. FTC*, 738 F.2d 554 (2d Cir. 1984).

Lastly, the FTC alleges that Quincy's claim that the active ingredient in Prevagen, apoaequorin, "enters the human brain to supplement endogenous proteins that are lost during the natural process of aging" is false. App'x at JA-38, ¶ 31. The FTC alleges that, in fact, Quincy's "safety studies show that apoaequorin is rapidly digested in the stomach and broken down into amino acids and small peptides like any other dietary protein." App'x at JA-39, ¶ 31. Drawing reasonable inferences in favor of the FTC, as we must, the FTC plausibly alleged that Quincy's representations about Prevagen's active ingredient entering the brain are false.

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co. Inc.*, 753 F. App'x 87, 89 (2d Cir. 2019).

Following the Second Circuit's guidance, the Court concludes that Plaintiff has plausibly alleged that each of the above statements about Prevagen is deceptive or misleading in violation of GBL §§ 349 and 350. That is, Plaintiff has plausibly alleged that it is materially deceptive to represent that Prevagen supports cognition or brain function based on the Madison Memory Study results that showed no such benefit. *See* FAC ¶¶ 39-45. Plaintiff has also plausibly alleged that it is misleading to claim that Prevagen supports brain function, because apoaequorin is digested by the stomach and pancreas. That is, Plaintiff has plausibly alleged that, even if injected apoaequorin had cognitive benefits, Prevagen's statements would deceive a customer into believing they could obtain these benefits through an oral supplement. FAC ¶ 33. Plaintiff also sufficiently alleges that, based on the complete inefficacy of Prevagen, marketing labels based on dosage strength mislead customers into believe there is additional benefit to higher strength version of Prevagen. FAC ¶ 49. Lastly, Plaintiff also plausibly alleges that Prevagen is improperly marketed as "safe and clinically tested" when the product fails to disclose possible side effects and the only "clinical[]" testing was an effectively falsified study that showed zero effectiveness for the product. FAC ¶¶ 49-55.

To be clear, the Court does not engage in any weighing of the evidence regarding the validity of these allegations at this stage. It simply concludes that, as alleged, Plaintiff has stated a claim under the New York GBL. *See Racies v. Quincy Bioscience, LLC*, No. 15 Civ. 292, 2015

7

WL 2398268, at *4 (N.D. Cal. May 19, 2015) ("If Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims."); *Fed. Trade Comm'n v. Quincy*, 753 F. App'x at 89 (holding that "the FTC and New York have made plausible allegations that Quincy's marketing campaign for Prevagen contained deceptive representations, and the district court erred in dismissing the Complaint in its entirety"); *see also Murrow*, 2025 WL 446149 at *4 (concluding that Plaintiff had adequately alleged false or misleading statements by Defendants regarding Prevagen but dismissing with leave to amend to satisfy Illinois state law requirements not present here).

### CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**. The parties are directed to file a proposed case management plan within 14 days of this Order. The proposed case management plan shall indicate whether the parties seek a referral to the District's mediation program or to the assigned Magistrate Judge for a settlement conference at this time. The Clerk of Court is respectfully directed to terminate ECF No. 43.

SO ORDERED.

Dated: March 23, 2026

New York, New York

_____

DALE E. HO
United States District Judge

8